UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DANE STUART,

                Petitioner,

       v.     **DECISION & ORDER**
                                                                18-CV-3071 (WFK)

HAROLD GRAHAM,

                Respondent.
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** Dane Stuart ("Petitioner"), proceeding *pro se*, brings this petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, ECF No. 1 (the "Petition"), challenging his conviction for two counts each of Attempted Murder in the Second Degree and Endangering the Welfare of a Child and one count each of Criminal Possession of a Weapon in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree. For the reasons discussed below, the Petition is DENIED in its entirety.

## BACKGROUND

### I.    Conviction and Sentencing

At approximately 5:00 A.M. on October 30, 2011, a shooting occurred in front of 668 Howard Street in Brooklyn, New York. Aff. of Arieh Schulman in Opp. to Pet. ¶ 4, ECF No. 5 ("Schulman Aff."). Petitioner shot Ronny Harding in the shoulder and the side with a .40 caliber handgun, and then chased Marlon Hope, Harding's friend, and fired multiple gunshots. *Id.* Petitioner then went to his girlfriend's house, where he held a gun to the head of his girlfriend's sister. *Id.* Petitioner was arrested the same day. *Id.* Police recovered a .40 caliber handgun at the time of Petitioner's arrest. *Id.* Petitioner was charged with the following crimes: (1) five counts of Criminal Possession of a Weapon in the Second Degree, in violation of N.Y. Penal Law § 265.03[1][B]; (2) two counts of Attempted Murder in the Second Degree, in violation of N.Y. Penal Law §§ 110.00 and 125.15[1]; (3) two counts of Endangering the Welfare of a Child, in violation of N.Y. Penal Law § 260.10[1]; (4) one count of Assault in the First Degree, in

1

violation of N.Y. Penal Law § 120.10[1]; (5) one count of Attempted Assault in the First Degree, in violation of N.Y. Penal Law §§ 110.00 and 120.10[1]; (6) one count of Assault in the Second Degree, in violation of N.Y. Penal Law § 120.05[2]; (7) one count of Criminal Possession of a Weapon in the Fourth Degree, in violation of N.Y. Penal Law § 165.01[1]; (8) Menacing in the Second Degree, in violation of N.Y. Penal Law § 120.14[1]; (9) Reckless Endangerment in the First Degree, in violation of N.Y. Penal Law § 120.25; (10) Robbery in the First Degree, in violation of N.Y. Penal Law § 160.15[4]; (11) Robbery in the Third Degree, in violation of N.Y. Penal Law § 160.05; (12) Grand Larceny in the Fourth Degree, in violation of N.Y. Penal Law § 155.30[5]; (13) Petit Larceny, in violation of N.Y. Penal Law § 155.25; and (14) Criminal Mischief in the Fourth Degree, in violation of N.Y. Penal Law § 145.00[1]. *Id.* ¶ 5.

On April 25, 2013, a jury convicted Petitioner of two counts each of Attempted Murder in the Second Degree and Endangering the Welfare of a Child, and one count each of Criminal Possession of a Weapon in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree. State Court Record at 5-3:355–57 ("R."),[1] Schulman Aff. ¶ 6. On May 28, 2013, New York Supreme Court Justice William H. Harrington sentenced Petitioner to consecutive terms of twenty years' incarceration and ten years' incarceration on the attempted murder counts. R. at 5-3:373–74; Schulman Aff. ¶ 7. Justice Harrington sentenced Petitioner to concurrent prison terms of ten years on the Criminal Possession of a Weapon in the Second Degree count and one year on each of the remaining counts. R. at 5-3:374; Schulman Aff. ¶ 7. The sentence also included a five-year term of post-release supervision. R. at 5-3:373–74; Schulman Aff. ¶ 7.

---

[1] As the State Court Record is comprised of multiple documents, in this Decision & Order, page citations to the State Court Record refer to the ECF docket entry followed by the page number as it appears in PDF pagination.

2

## II. Post-Conviction Activity

Petitioner appealed his conviction to the Supreme Court Appellate Division, Second Department (the "Appellate Division"). Petitioner raised three issues on appeal: (1) the evidence was legally insufficient to prove the second count of attempted murder pertaining to Mr. Hope; (2) the prosecutor impermissibly bolstered identification testimony against Petitioner; and (3) the thirty-year sentence was excessive. R. at 5-4:7. The Appellate Division affirmed Petitioner's conviction on March 23, 2016. *People v. Stuart*, 137 A.D.3d 1171, 1171 (N.Y. App. Div. 2d Dep't 2016). On June 24, 2016, the New York Court of Appeals denied Petitioner leave to appeal the decision. *People v. Stuart*, 61 N.E.3d 521 (N.Y. 2016).

On March 7, 2017, Petitioner, proceeding *pro se*, sought a writ of error *coram nobis* in the Appellate Division. Petitioner claimed he received the ineffective assistance of counsel on appeal because his appellate counsel did not argue ineffective assistance of trial counsel for failure to move for trial order of dismissal of the second attempted murder charge on the basis of insufficiency of evidence. R. at 5-4:104. The Appellate Division denied the motion for a writ of error *coram nobis* on October 11, 2017. *People v. Stuart*, 154 A.D.3d 787, 788 (N.Y. App. Div. 2d Dep't 2017). The Court of Appeals denied Petitioner leave to appeal further. *People v. Stuart*, 94 N.E.3d 496 (N.Y. 2017).

On the same day he filed his *pro se* motion for a writ of error *coram nobis*, Petitioner also moved *pro se* in the Supreme Court for an order setting aside his sentence pursuant to New York Criminal Procedure Law § 440.20. Petitioner argued the consecutive sentences on the attempted murder counts were unauthorized, illegally imposed, or otherwise invalid as a matter of law. R. at 5-4:123. Justice Harrington denied the motion on June 8, 2017. R. at 5-4:147–49. Petitioner did not seek leave to appeal the decision. Schulman Aff. ¶ 16.

3

Petitioner filed the instant Petition on May 22, 2018. ECF No. 1.

## LEGAL STANDARD

The Court's review of the Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. A federal *habeas* court may only consider whether a person is in custody pursuant to a state court judgment "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA requires federal courts to apply a "highly deferential standard" when conducting *habeas corpus* review of state court decisions and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). When a claim has been "adjudicated on the merits" in state court, a federal court may grant a *habeas* petition only where it finds adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## DISCUSSION

### I. Timeliness of Petition

Respondent alleges the Petition is untimely and should be dismissed. Mem. of Law in Opp. to Pet. ("Opp. Mem.") at 2–3, ECF No. 5. The Court disagrees and concludes the Petition is timely and must be considered on the merits.

The AEDPA imposes a "[one]-year period of limitation" for filing a *habeas* petition, 28 U.S.C. § 2244(d)(1), running from, as relevant here, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking review," *id.* §

4

2244(d)(1)(A). The statute provides for tolling of the limitation period during "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

For purposes of the AEDPA, a conviction is considered final "only after the denial of certiorari or the expiration of time for seeking certiorari." *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001), *cert. denied*, 534 U.S. 924 (2001). The Appellate Division affirmed Petitioner's conviction on March 23, 2016, and the Court of Appeals denied Petitioner leave to appeal on June 24, 2016. Petitioner did not seek a writ of certiorari from the Supreme Court of the United States, and the time to do so expired on September 22, 2016. The limitation period began to run on that day and continued for 166 days until March 7, 2017, when Petitioner filed his motion for a writ of error *coram nobis* and his motion to set aside his sentence, which tolled the limitation period. The limitation period remained tolled until December 28, 2017, when the New York Court of Appeals denied Petitioner leave to appeal from the Appellate Division's denial of his motion for a writ of error *coram nobis*. Petitioner filed the Petition on May 22, 2018, 145 days later. The cumulative amount of untolled time attributable to Petitioner for purposes of the AEDPA is 311 days.

Accordingly, the Petition is timely and the Court will proceed to consider it on the merits.

II.   **Merits of the Petition**

Petitioner raises three grounds in support of his petition for *habeas* relief: (1) ineffective assistance of appellate counsel due to counsel's failure to raise on direct appeal ineffective assistance of trial counsel predicated on counsel's failure to move for a trial order of dismissal for the second attempted murder count; (2) the sentence imposed was unauthorized, illegally imposed, or otherwise invalid as a matter of law; and (3) violations of the Fifth, Eighth, and

5

Fourteenth Amendments to the United States Constitution. Pet. at 5 (referring to Petitioner's motion for a writ of error *coram nobis*), 6 (referring to Petitioner's motion to vacate his sentence), 8.[2] The Court will address each ground in turn.

### A. Ineffective Assistance of Appellate Counsel

For his first ground for *habeas* relief, Petitioner cites to his motion for a writ of error *coram nobis* and submits no further facts or information in support. Given the Court's obligation to construe *pro se* pleadings liberally, *Johnson v. Fogg*, 653 F.2d 750, 753 (2d Cir. 1981) (*per curiam*), *cert. denied*, 456 U.S. 907 (1982), the Court will consider all the arguments raised in Petitioner's motion to vacate as being raised before the Court in the Petition.

In his motion for a writ of error *coram nobis*, Petitioner argues he "was denied effective assistance of appellate counsel due to counsel's failure to raise ineffective assistance of trial counsel predicate on counsel's failure to move for trial order of dismissal of attempted murder count involving Marlon Hope when there was no evidence showing that [Petitioner] directed a gunshot at him." R. at 5-4:104. The Appellate Division denied Petitioner's motion, 154 A.D.3d 787, and the Court of Appeals denied Petitioner leave to appeal further, 94 N.E.3d 496.

*Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the relevant federal law governing ineffective assistance claims for both trial and appellate counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994), *cert. denied*, 513 U.S. 820 (1994) ("Although the *Strickland* test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel."). To prevail on such a claim, a *habeas* petitioner "must show that his attorney's performance fell below an objective standard of reasonableness, and second, he must show that there is a reasonable probability that but for

---

[2] As the Petition is comprised of multiple documents without consistent pagination, citations to the Petition in this Decision & Order refer to the page number as it appears in PDF pagination.

6

counsel's error, the outcome would have been different." *Id.* (internal quotations and citations omitted).

Upon a careful review of the record, Petitioner's appellate counsel raised the exact argument forming the basis of Petitioner's claim for ineffective assistance. In Petitioner's appellate brief, appellate counsel stated:

> Given the utter lack of proof that appellant attempted to cause Hope's death, his attempted murder conviction as to Hope cannot be sustained. Defense counsel below inexplicable failed to preserve this issue. This Court should either reach it in the interest of justice or find that defense counsel was ineffective for failing to preserve it. In his timely motion for a trial order of dismissal, defense counsel was properly specific as to several counts, but when asked by the court whether he had any specific arguments about the counts directly relating to the shooting, counsel declined . . . . Given the obvious deficiencies in the People's proof that appellant attempted to cause Hope's death, there could have been no objectively reasonable strategy in counsel's failure to specifically move to dismiss the concomitant attempted murder count, and counsel's failure in this regard constituted ineffective assistance of counsel.

R. at 5-4:32–33. The Appellate Division properly denied Petitioner's motion for a writ of error *coram nobis* on this basis, *Stuart*, 154 A.D.3d at 788; as such, its decision was not contrary to or an unreasonable application of clearly established Supreme Court law.

Accordingly, Petitioner's claim for *habeas* on this ground must be DENIED.

### B. Legality of Sentence

For his second ground for *habeas* relief, Petitioner cites to his motion to vacate sentence and submits no further facts or information in support. Pet. at 6–7. The Court will again consider all the arguments raised in Petitioner's motion to vacate as being raised before the Court on this petition for *habeas* relief.

In his motion to vacate, Petitioner argued "the court's imposition of consecutive sentences is (1) contrary to clear legislative intent prohibiting consecutive sentences for two or more offenses committed through a single act (Penal Law § 70.25[2]), (2) exceeds the court's

7

sentencing authority, and (3) violates the double jeopardy clause prohibition against imposing multiple punishments for the same offense." R. at 5-4:127. By decision and order dated June 8, 2017, the Supreme Court denied Petitioner's motion. R. at 5-4:147–49. Petitioner did not appeal the denial.

"No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). "With respect to sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

Petitioner was convicted of two counts of Attempted Murder in the Second Degree under N.Y. Penal Law §§ 110.00 and 125.15[1]. R. at 5-3:355; Schulman Aff. ¶ 6. One count pertained to Ronny Harding and one count pertained to Marlon Hope. R. at 5-4:147. New York Penal Law § 70.25[2] mandates a concurrent sentence "[w]hen more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission." In the decision and order denying Petitioner's motion to vacate his sentence, the Supreme Court justice held "although the two attempted murders occurred during the same criminal transaction, the *actus rei* of the two attempted murders were separate and distinct. [Petitioner] shot Ronny Harding in the shoulder and then, in a separate act involving a different complainant, chased after and fired shots at Marlon Hope. In another separate and distinct act, the defendant returned to the original location and shot Ronny Harding in the head. Given the distinct acts committed by [Petitioner], consecutive sentences were appropriate and lawful." R. at 5-4:148.

8

The Supreme Court correctly held although part of one extended transaction, Petitioner's offenses were clearly based on separate and distinct acts; therefore, imposition of consecutive sentences was both lawful and appropriate. As such, the denial of Petitioner's motion to vacate his sentence was not contrary to or an unreasonable application of clearly established Supreme Court law. Accordingly, Petitioner's claim for *habeas* on this ground must be DENIED.

### C. Violations of the United States Constitution

For his third ground for *habeas* relief, Petitioner claims violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, citing his appellate brief. Pet. at 8. Petitioner also states the following supporting facts: "(1) denial of due process and a fair trial by prosecutors impermissible bolstering of testimony[;] (2) legally insufficient evidence[; and] (3) cruel and unusual punishment." *Id.* Construing the Petition as broadly as possible, the Court will evaluate these "supporting facts" as separate grounds for *habeas* relief.

#### 1. Impermissible Bolstering

Petitioner argued in his appellate brief "[t]he prosecutor impermissibly bolstered the identification testimony against [Petitioner] when she submitted into evidence a photo array in which a witness identified someone else as the gunman, then argued in summation that the witness made that identification because the person he identified resembled [Petitioner]." R. at 5-4:34. The Appellate Division rejected this argument, holding "[d]efense counsel opened the door to the admission of the photo array by eliciting testimony during cross-examination that the photo array, which did not contain [Petitioner's] photograph, had been shown to that complainant and that he equivocally identified an individual in the photo array as the perpetrator. The photo array was necessary to allow the jury to evaluate the degree to which that complainant's identification of [Petitioner] was impeached." *Stuart*, 137 A.D.3d at 1171–72.

9

Petitioner makes a slightly different argument in the Petition, claiming he was denied due process and a fair trial as a result of impermissible bolstering of the testimony by the prosecutor. Pet. at 8. Construing the Petition as broadly as possible, the Court will evaluate this claim based on arguments of prosecutorial misconduct and improper admission of the photo array.

In reviewing a *habeas* petition for prosecutorial misconduct, "a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Further, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983), *cert. denied*, 464 U.S. 1000 (1983).

Here, Petitioner was not denied due process or a fair trial. On the same day of the shooting and before Petitioner's arrest, Detective Ulmer showed Mr. Hope a photographic array of six men, none of whom were Petitioner. R. at 5-3:193. Mr. Hope identified the third photograph as the photograph that most closely resembled Petitioner. R. at 5-3:194. Prior to the trial, the court held the prosecutor could not admit evidence of the viewing of the photographic array in the People's direct case. R. at 5-1:427–28. However, the court stated the prosecutor could present the evidence if defense counsel opened the door by eliciting testimony that Mr. Hope selected someone other than Petitioner in the photographic array, R. at 5-1:428, which defense counsel did during cross-examination of Mr. Hope, R. at 5-2:328–29, and Detective Ulmer, R. at 5-3:193–94. The prosecutor then moved the photographic array into evidence to demonstrate Petitioner's photograph was not included in the array and Mr. Hope selected the

photograph that most closely resembled Petitioner. R. at 5-3:194–95. In his summation, defense counsel sought to discredit Mr. Hope's identification of Petitioner in part by citing to the use of the photographic array. R. at 5-3:248–51. In her summation, the prosecutor sought to rehabilitate Mr. Hope's credibility by showing the photograph Mr. Hope selected in the photographic array and explaining he picked the person most closely resembling Petitioner, but did not identify the person as Petitioner. R. at 5-3:269–72. The court consistently reminded the jury their recollection of the evidence controls and the lawyer's comments are not evidence, just argument. R. at 5-3:234–35, 248, 272.

During the trial, defense counsel appropriately sought to discredit the witness identifying Petitioner. The prosecutor's argument to rehabilitate the identifying witness was also appropriate. Moreover, the prosecutor "did not manipulate or misstate the evidence" and her argument "was invited by or was responsive" to defense counsel's arguments. *Darden*, 477 U.S. at 182. The admission of the photographic array and the prosecutor's arguments in her summation did not deprive Petitioner of due process or a fair trial.

Accordingly, Petitioner's claim for *habeas* on this ground must be DENIED.

### 2. Legal Insufficiency of the Evidence

Petitioner argued in his appellate brief "[t]here was no evidence whatsoever in this case that [Petitioner] aimed or directed a gunshot at Marlon Hope, and thereby attempted to cause his death. Given the complete lack of proof on this record, the attempted murder conviction as to Hope cannot be sustained." R. at 5-4:30. As Petitioner makes a seemingly identical argument here and cited to his appellate brief in support of this ground for *habeas* relief, the Court will consider this argument as raised in his appellate brief.

As an initial matter, the Court finds Petitioner's legal sufficiency of the evidence claim is procedurally barred from consideration. "A federal court sitting in habeas 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment.'" *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The Appellate Division found Petitioner's legal sufficiency of the evidence claim was "unpreserved for appellate review," citing to New York Criminal Procedure Law § 470.05. *Stuart*, 137 A.D.3d at 1171. The Second Circuit has held that a decision based on this statute constitutes an independent and adequate ground precluding federal review. *Richardson*, 497 F.3d at 220. Therefore, Petitioner's claim is procedurally barred.

Nonetheless, the Court finds this claim to be without merit. A petitioner challenging the legal sufficiency of his conviction in a *habeas* petition "bears a very heavy burden." *Einaugler v. Sup. Ct. of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When considering a legal sufficiency of the evidence claim, "a federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999), *cert. denied*, 528 U.S. 1170 (2000).

Petitioner challenges his conviction on the second count of attempted murder in the second degree. To establish a defendant's guilt of attempted murder in the second degree, the People must prove a defendant, "with the intent to cause the death of another person, [] engaged in conduct which tended to effect commission of that crime." *People v. Molina*, 79 A.D.3d

12

1371, 1375 (N.Y. App. Div. 3d Dep't 2010); N.Y. Penal Law §§ 110.00, 125.25[1]. A review of the record demonstrates there was substantial evidence to support the jury's findings of the essential elements of the crime beyond a reasonable doubt. The evidence presented at trial included, *inter alia*, an identification of Petitioner by Mr. Hope, consistent testimony from each of the victims about the events, the weapon used in the shooting, and surveillance video. Opp. Mem. at 21. Mr. Hope also testified Petitioner chased him after shooting Mr. Harding and fired additional gunshots. R. at 5-2:284–85. Based on this evidence, a rational jury could have determined Petitioner intended to kill Mr. Hope. Petitioner has failed to satisfy the high burden of demonstrating no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

Accordingly, Petitioner's claim for *habeas* on this ground must be DENIED.

### 3. Cruel and Unusual Punishment

Petitioner's claim he was subject to cruel and unusual punishment is similarly without merit. "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White*, 969 F.2d at 1383. "Moreover, a sentence does not run afoul of the Eighth Amendment's prohibition of 'cruel and unusual punishments' if the sentence is within the range prescribed by state law." *Tucker v. Yelich*, 16-CV-4931, 2017 WL 3669613, at *10 (E.D.N.Y. Aug. 24, 2017) (Bianco, J.). As discussed above, Petitioner was sentenced to twenty years' imprisonment and ten years' imprisonment, respectively, on each of the attempted murder counts. New York law authorizes the imposition of consecutive sentences, and the state court properly imposed consecutive sentences in this case. Petitioner's sentence is within the range authorized by state law, and thus no federal constitutional issue is presented.

Accordingly, Petitioner's claim for *habeas* on this ground must be DENIED.

## CONCLUSION

For the foregoing reasons, the Petition is DENIED in its entirety. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253. The Clerk of the Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

SO ORDERED

s/ WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 1, 2020
    Brooklyn, New York